MATTER OF BRONX MUNICIPAL HOSPITAL CENTER

IN VISA PETITION PROCEEDINGS

NYC-N-24294

*Decided by Regional Commissioner June 24, 1968*

A visa petition to accord beneficiary, a physician, industrial trainee classification under section 101(a)(15)(H)(iii) of the Immigration and Nationality Act as a medical resident in the petitioning hospital is denied since the offer of medical residency is not primarily an offer of training within the meaning of that section but is essentially an offer of productive employment which ordinarily would be performed by a person living in the United States.

ON BEHALF OF PETITIONER: Elmer Fried, Esquire
515 Madison Avenue
New York, New York 10022

This matter is before the Regional Commissioner on appeal from the decision of the District Director denying this petition.

This is a joint petition. The first petitioner is a large hospital in the New York City area. The second petitioner is a college of medicine which since 1951 has assumed responsibility for the professional care of patients in the hospital, now the principal teaching hospital of the college. The co-petitioners seek to have the beneficiary accorded non-immigrant industrial trainee classification under section 101(a)(15)(H)(iii) of the Immigration and Nationality Act for a residency in psychiatry which will extend for a period of three years, 44 hours a week. The salary for the first year is $5,600, for the second year approximately $6,000, and for the third year about $6,400.

The beneficiary is a 26-year-old native, citizen, and resident of Canada, a physician by occupation.

At the beginning of his oral argument, counsel stated that a residency is by its nature training; that any productive work of the beneficiary will be negligible for the first year; that there is nothing in the statute or regulations to preclude classification as an industrial trainee of a doctor coming to the United States as an intern or resident in a hospital; and, further, that the denial order of the District Director was in effect meaningless, merely a compliance with an assumed unpublished policy of the Service not to grant such status to a doctor.

Counsel assumed such a policy existed on the basis of the telephonic response of an unidentified person in the District Director's office to an inquiry by the hospital prior to filing of this petition. Reportedly the Service employee stated that the hospital could bring a physician into the United States for an internship or residency only as an immigrant or as an exchange visitor. Such a statement, as well as our review of the record of proceeding (and the administrative portion of the file), does not show that the District Director's decision was made other than in the exercise of his independent judgment on the facts of record pursuant to the authority delegated to him. We shall consider the appeal on its merits.

Section 101(a)(15) of the Act defines a nonimmigrant industrial trainee as follows:

(H) an alien having a residence in a foreign country which he has no intention of abandoning . . . (iii) who is coming temporarily to the United States as an industrial trainee;

Section 214(c) of the Act provides:

(c) The question of importing any alien as a nonimmigrant under section 101 (a)(15)(H) in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer. Such petition shall be made and approved before the visa is granted. The petition shall be in such form and contain such information as the Attorney General shall prescribe. . . .

The prescribed regulation (8 CFR 214.2(h)(2)(iii)) reads as follows:

(iii) *Petition for alien industrial trainee.* In addition to purely industrial establishments an individual, organization, firm or other trainer may petition for industrial trainees on Form I-129B for the purpose of giving instruction or training in agriculture, commerce, finance, government, transportation, and the professions. The source of any remuneration received by an industrial trainee and whether or not any benefit will accrue to the petitioner are not material, but an industrial trainee shall not be permitted to engage in productive employment, if such employment will displace a United States resident. A hospital approved by the American Medical Association for either an internship or residency program may petition to classify as an industrial trainee a medical student who will engage in employment as an extern during his medical school vacation period. There shall be attached to each petition for an industrial trainee a statement describing the type of training to be given, the position or duties for which the beneficiary is to be trained, and whether such training can be obtained outside the United States. There shall be included an explanation as to the need for the trainee to be trained in the United States.

The supporting documents filed with this petition consist of a statement that the petitioner plans to train the alien starting July 1, 1968 in accordance with its enclosed brochure, and the brochure of twelve pages entitled "Residency Training in Psychiatry."

On oral argument, counsel stressed the high professional standing of the petitioners, but on the issue of need to take the residency in the United States, indicated this is largely a matter of choice of an institution by the alien. Counsel asserted this is not a proper case for classification of the alien as an exchange visitor (section 101(a)(15)(J) of the Act), stating that the purpose of exchange visitor programs is to bring persons from undeveloped countries to the United States for training for the benefit of the undeveloped countries upon their return to such countries, and that Canada is not an undeveloped country.

With respect to the education and training of physicians, notice may be taken that medical schools in Canada are under the same close supervision as medical schools in the United States. The Educational Council for Foreign Medical Graduates (ECFMG) sponsored by The American Hospital Association, The American Medical Association, The Association of American Medical Colleges, and The Federation of State Medical Board of the United States, in its pamphlet "Information for Applicants", exempts from its definition of "foreign medical graduates" foreign nationals who are graduated from medical schools in the United States, Puerto Rico, and *Canada*. The petitioner has not satisfactorily established that a similar residency or training is not available to the beneficiary in his native country.

Counsel further asserts that the beneficiary intends to return to Canada after completion of the residency, but states the alien does not wish to place himself in a position where he will be subject to the two-year foreign residence requirement applicable to exchange visitors seeking permanent residence in the United States. Counsel explains that the beneficiary's wife is a United States citizen presently employed in Canada; that she will be coming to the United States to obtain a teaching position; that he knows it is possible she may give the alien a hard time about breaking up her career if she becomes well established here; and that in such a family situation, the beneficiary might be forced to pursue his own career in the United States.

The principal issue is whether the position of "resident" in this hospital is "training" within the meaning of section 101(a)(15)(H)(iii) of the Act.

The brochure describing this residency has been carefully reviewed. Some formal instruction is set forth. It is noted that the philosophy of the residency programs contains the statement that the residents "generally speaking, become active partners in the treatment of the patient"; and that, "The application of principles is left almost entirely to the resident, since the responsibility for the care of the patient is mainly his." Under the heading, "The Residency Program," there is the opening statement, "The residency program is organized essen-

tially as a clinical program based on work with inpatients and out-patients, both adult and pre-adult". The "First Year Schedule" includes statements indicating the resident engages in productive employment, such as work in the Developmental Evaluation Clinic while on the research ward for two months service, being "the doctor responsible for the patient's care during the period that he is assigned to the clinic".

With respect to physicians, "The Occupational Outlook Handbook", 1966–67 Edition, a publication of the Department of Labor, states at page 120:

Earnings and Working Conditions

New graduates *serving* as interns in 1964 had an average annual salary of $3,053 is hospitals affiliated with medical schools and $3,678 in other hospitals. Resident during 1964 *earned* average annual salaries of $3,739 in hospitals affiliated with medical schools and $4,309 in nonaffiliated hospitals. Many hospitals also provided full or partial room, board, and other maintenance allowances to their interns and residents. (Emphasis supplied.)

The position of intern in a hospital is a continuing position of a permanent nature on the hospital staff. *Matter of M—S—H—*, 8 I. & N. Dec. 460. The medical resident, who has completed an internship, holds a more responsible position on the hospital staff. The position the beneficiary is to occupy is one of a limited number at this hospital. His responsibilities will be the same as those of other residents on the hospital staff.

After careful consideration of the entire record in the light of the representations on appeal, it is found that the offer of the residency in this hospital is not primarily an offer of training within the meaning of section 101(a)(15)(H)(iii) of the Act, but on the contrary is essentially an offer of productive employment which ordinarily would be performed by a person living in the United States. It is concluded that the beneficiary is not eligible for nonimmigrant industrial trainee classification. The appeal will be dismissed.

*It is ordered* that the appeal be and hereby is dismissed.

771